FILED

2026 Apr-07  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES C. MARTIN, III** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:23-cv-00167-MHH** |
| | } | |
| **THE ALABAMA GREAT** | } | |
| **SOUTHERN RAILROAD** | } | |
| **COMPANY,** *et al.*, | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Martin has sued his former employers, Alabama Great Southern Railroad Company, Norfolk Southern Corporation, and Norfolk Southern Railway Company (collectively "Norfolk Southern"). (Doc. 21). Mr. Martin asserts claims for age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA) and disability discrimination under the Americans with Disabilities Act (ADA). (Doc. 21, pp. 1–2, 17–22, ¶¶ 1–3, 52–77).[1] Mr. Martin seeks injunctive relief and damages, including pay, front pay, and lost benefits. (Doc. 21, pp. 24, ¶¶ 1–3). Norfolk Southern has moved for summary judgment on

---

[1] Mr. Martin alleged a retaliation claim under the Federal Railroad Safety Act, (Doc. 21, pp. 2, 22–23, ¶¶ 2, 78–84). Pursuant to the parties joint stipulation, (Doc. 77), the Court dismissed Mr. Martin's FRSA claim, (Doc. 78). Accordingly, Norfolk Southern's summary judgment arguments regarding Mr. Martin's FRSA claim are moot.

Mr. Martin's claims for liability and for back pay, front pay, and lost benefits.  (Doc. 49).  This opinion addresses Norfolk Southern's motion.

The Court begins with an overview of the legal standard that governs motions for summary judgment.  Then, consistent with that standard, the Court summarizes the evidence in the summary judgment record and analyzes Mr. Martin's claims based on the summary judgment evidence.

## I.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  FED. R. CIV. P. 56(c)(1)(A).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party.  *White v. Beltram Edge*

*Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Applying this standard, the Court presents the summary judgment evidence in the light most favorable to Mr. Martin.

## II.

Charles Martin worked for Norfolk Southern from May 1979 until January 14, 2021. (Doc. 50-1, p. 153, ¶ 2). During this time, Mr. Martin worked as a yard foreman or mainline conductor at the company's railyard in Meridian, Mississippi. (Doc. 50-1, p. 15, tp. 54:2–6; Doc. 50-1, p. 153, ¶ 2). In 2019 or 2020, Mr. Martin became the most senior employee in his region and transitioned to a utility position. (Doc. 50-1, pp. 15, 16–17, tpp. 55:13–17, 60:23–61:4).[2] As a utilityman, Mr. Martin

---

[2] Norfolk Southern allows employees to bid on positions according to their seniority. (Doc. 50-1, p. 15, tp. 53:4–8).

3

"expedit[ed] trains" and "assist[ed] crews." (Doc. 50-1, p. 17, tp. 63:10–20; Doc. 57-1, p. 12, tp. 40:22–41:3).

In late 2020, Norfolk Southern's "business levels . . . called for job reductions." (Doc. 57-1, p. 12, tp. 38:3–11). Accordingly, Norfolk Southern's Alabama Division Superintendent John Brockman and Director of Train Services Janea Parr reviewed jobs in the division, including the Meridian district, to identify jobs that could be eliminated. (Doc. 57-1, pp. 9, 10, tpp. 26:21–27:3, 33:3–14). They identified Mr. Martin's Meridian utility position for elimination. (Doc. 57-1, p. 10, 33:15–17).

John Hill, the district superintendent for Meridian, opposed eliminating Mr. Martin's utility position. (Doc. 50-7, pp. 2–3, ¶¶ 4–5; Doc. 57-1, p. 10, tp. 33:15–21). Mr. Hill told Ms. Parr and Mr. Brockman that Mr. Martin would become a yard conductor if Norfolk Southern eliminated his utility position. (Doc. 57-1, p. 11, tp. 35:4–20). Mr. Hill argued that Mr. Martin was "too old and slow" to be a yard conductor and would slow operations and cause safety issues because of his age. (Doc. 57-1, pp. 11, 12, 13, tpp. 34:22–35:3, 39:20–40:6, 42:19 – 43:2). When Mr. Brockman informed Mr. Hill that the position would be eliminated over his objections, Mr. Hill complained that "his operations were going to suffer by [Mr.] Martin . . . mov[ing] to that conductor job because [Mr. Martin] wouldn't get the work done." (Doc. 57-1, p. 13, tpp. 43:23–44:13).

4

Norfolk Southern eliminated Mr. Martin's utility position on December 24, 2020. (Doc. 50-1, p. 20, tp. 75:11–21; Doc. 50-1, p. 284). Mr. Martin began working as a yard conductor on December 28, 2020. (Doc. 50-1, p.153, ¶ 3; Doc. 50-1, p. 284). As a yard conductor, Mr. Martin was responsible for safely managing Norfolk Southern's freight trains. (Doc. 50-7, p. 3, ¶ 6). Yard conductor jobs frequently require strenuous outdoor work, heavy lifting, walking, climbing, pushing, and pulling. (Doc., 50-1, p. 33, 34, tpp. 128:1–10, 129:7–132:20; Doc. 50-7, pp. 3–4, ¶ 7). The Hours-of-Service law recognizes conductor jobs as "safety-sensitive," and a yard conductor's momentary impairment or lapse in focus can be fatal. (Doc. 50-1, pp. 32, 33, tpp. 123:6–21, 128:1–10; Doc. 50-7, p. 3–4, ¶¶ 6, 7).

On January 11, 2020, Mr. Hill ordered a trainmaster from New Orleans to observe Mr. Martin's work at the Meridian yard. (Doc. 50-1, p. 153, ¶ 4; Doc. 50-7, p, 4, ¶10). The trainmaster watched Mr. Martin but never spoke to him or approached him to discuss job performance issues. (Doc. 50-1, p. 153, ¶ 4). The trainmaster took notes and reported to Mr. Hill that Mr. Martin appeared to be limping, out of breath, and straining to use physical strength to operate switch levers. (Doc. 50-7, pp. 4–5, ¶¶ 11–14).

The following day, Mr. Martin reported potential safety issues with switches and derails at the Meridian railyard to yardmaster Brian Sharp. (Doc. 50-1, pp. 88, 89, tpp. 348:8–19, 349:2–5; Doc. 50-1, p. 265). On January 14, 2020, Mr. Sharp

5

emailed James Rowen detailing Mr. Martin's report. (Doc. 50-1 p. 265). Mr. Rowen forwarded the email to Mr. Hill. (Doc. 50-1 p. 265).

On January 14, 2020, Mr. Hill traveled to Meridian to observe Mr. Martin's work. (Doc. 50-1, p. 284). Mr. Hill noted that Mr. Martin was "visibly overweight," took very small steps as if in pain, took five minutes to walk south in the yard, and was "visibly struggl[ing] to cross tracks with his feet barely clearing rails." (Doc. 50-4, p. 64). These issues were not safety violations. (Doc. 50-4, pp. 12–13, 41:3–43:10). Mr. Hill reported that Mr. Martin struggled to bend over and operate switches. (Doc. 50-7, p. 5, ¶16; Doc. 50-7, p. 12).

Mr. Hill approached Mr. Martin and remarked that Mr. Martin "look[ed] like [he was] struggling." (Doc. 50-1, p. 284). Mr. Martin responded that he was "fine." (Doc. 50-1, p. 284). Soon after, the yardmaster instructed Mr. Martin to report to the yard office. (Doc. 50-1, p. 284). When Mr. Martin arrived at the office, Mr. Hill asked him how old he was, how many years he had worked for the railroad, and why he had not retired. (Doc. 50-1, p. 42, tpp. 162:18–163:6; Doc. 50-1, p. 284). Mr. Hill told Mr. Martin that he believed Mr. Martin was struggling to step over tracks and that Mr. Martin would have ridden the side of the railcar being switched out "when [he] was younger." (Doc. 50-1, p. 284). Mr. Martin responded that he was not struggling to do his job. (Doc. 50-1, p. 284). Mr. Hill removed Mr. Martin from

service and informed Mr. Martin that the medical department would contact him. (Doc. 50-1, p. 284).

Mr. Hill reports that he decided to take Mr. Martin out of service "based solely on . . . concerns about his safety and the safety of others."  (Doc. 50-7, pp. 5–6, ¶¶ 19–20).  Mr. Hill asserts that he did not believe that Mr. Martin had a disability and that his decision to remove Mr. Martin from service was not based on Mr. Martin's age or reported safety concerns.  (Doc. 50-7, pp. 5–6, ¶¶ 19–21).  Mr. Hill told Mr. Brockman that he decided to take Mr. Martin out of service because Mr. Martin was "too old to do the job safely."  (Doc. 57-1, p. 18, tp. 65:9–22).

After Mr. Hill removed him from service, Mr. Martin sought reinstatement. Norfolk Southern makes its own determinations of an employee's fitness for duty and typically does not rely on the opinion of employees' personal physicians.  (Doc. 50-7, p. 7, ¶ 27; Doc. 50-10, p. 4, ¶¶ 9–10).  After an employee is medically cleared, Norfolk Southern may require the employee to take a Fitness for Duty Evaluation (FDE) to determine whether the employee can safely perform his work.  (Doc. 50-10, p. 4, ¶ 9).  Norfolk Southern uses an FDE to assess an employee's compliance with safety and general conduct rules and to identify areas for improvement.  (Doc. 50-4, p. 6, tpp. 15:14–16:8).  Norfolk Southern removes from service employees who commit "safety critical" rule violations.  (Doc. 50-4, p. 6, tpp. 16:9–17:1). The company typically gives employees who commit only non-safety critical violations

time to address the violations while continuing to work.  (Doc. 50-4, p. 6, tpp. 16:9–17:1).

Mr. Martin visited his primary care physician for a fitness examination and received a note confirming his fitness to work without restrictions.  (Doc. 50-1, p. 285).  He sent the note to the railroad's medical department.  (Doc. 50-1, p. 285). The medical department told Mr. Martin that his supervisor would contact him. (Doc. 50-1, p. 285).  On January 25, 2021, the medical department informed Mr. Martin that he was cleared to return to work and that they had notified his supervisor of his status.  (Doc. 50-1, p. 286).

After the medical department cleared Mr. Martin, Mr. Hill contacted Labor Relations to arrange an FDE.  (Doc. 50-7, p. 6, ¶ 22).  On February 4, 2021, Craig Porter, a training coordinator, conducted Mr. Martin's first FDE.  (Doc. 50-4, p. 66). Mr. Porter's job duties include determining whether employees are physically and mentally fit to perform their jobs,  (Doc. 50-4, p. 6, tp. 14:11–21), but  Mr. Martin's FDE was the first Mr. Porter administered, (Doc. 50-4, p. 9, tp. 26:2–5).  Trainmaster Jacob Noe, a supervisor at the Meridian train yard, and Marquese Sillimon, a union representative, observed the evaluation.  (Doc. 50-4, p. 9, tp. 27:1–7; Doc. 50-4, p. 66; Doc. 57-1, p. 7, tp. 19:6–17; Doc. 57-2, p. 2, ¶ 2).  Mr. Hill did not observe or participate in the evaluation.  (Doc. 50-7, p. 6, ¶ 23).

The FDE required Mr. Martin to perform a portion of the tasks he would perform as a yard conductor. (Doc. 50-1, p. 53, tpp. 206:14–207:3). Mr. Porter reported that Mr. Martin violated company safety and general conduct rules on five of the seven tasks tested. (Doc. 50-4, p. 66). Mr. Noe noted that Mr. Martin physically struggled with the tasks, was physically fatigued, and was breathing heavily upon completion of several tasks. (Doc. 50-4, pp. 66–67).[3] Mr. Porter testified that he was not aware of Mr. Martin's age. (Doc. 50-4, pp. 9, 28, tpp. 27:22–29:2, tp. 105:5–17). No one made comments about Mr. Martin's age or a perceived disability during the FDE. (Doc. 50-6, p. 40, tpp. 151:18–152:21).

Mr. Sillimon saw things differently. Mr. Sillimon attests that Mr. Martin "performed all of the tasks in accordance with [Norfolk Southern] rules without any difficulty and within the time limit imposed," (Doc. 57-2, p. 3, ¶ 6); that several of the railroad's proffered reasons why Mr. Martin failed the evaluation are false, (Doc.

---

[3] According to the FDE report, Mr. Martin violated Safety and General Conduct Rule 1070 and failed to ascertain that the location was free of obstructions before dismounting equipment while performing the following tasks: "mount and dismount equipment," "cross over equipment," "apply end-mounted vertical-wheel hand brake," and "enter and exit a locomotive operating compartment." (Doc. 50-4, p. 66).

During the "cross over equipment" task, Mr. Martin "failed to use the side-step method for moving across the equipment." (Doc. 50-4, p. 66). During the "apply end-mounted vertical-wheel hand brake task," Mr. Martin violated Safety and General Conduct Rule 1100 by "grasp[ing] the spoke of the hand brake while releasing." (Doc. 50-4, p. 66). During the "enter and exit a locomotive operating compartment" task, Mr. Martin violated Safety and General Conduct Rule 1083 by "fail[ing] to maintain a firm hold on cab door when exiting." (Doc. 50-4, p. 66). During the "operate a hand throw switch" task, Mr. Martin violated Safety and General Conduct Rule 1110 by "fail[ing] to check for obstructions . . . to operate with smooth movement . . . to use two hands, and . . . to check switch points." (Doc. 50-4, p. 66).

57-2, pp. 3–5, ¶¶ 8–10); and that Mr. Porter and Mr. Noe did not "criticize [Mr.] Martin's performance" during the FDE, (Doc. 57-2, p. 3, ¶ 6).

The day after his FDE, Mr. Martin called the Norfolk Southern Ethics Hotline and reported that Mr. Hill told him that he was too old and slow, removed him from service, and required him to submit to an FDE after he was medically cleared to return to work. (Doc. 50-1, p. 286). Mr. Martin reported that he believed he was removed from service because Mr. Hill said he was too old and slow. (Doc. 50-1, p. 286). Mr. Martin repeated his allegations to Danielle Weil in Norfolk Southern's EEOC department. (Doc. 50-1, pp. 286–87). In early March, Mr. Martin spoke with Ms. Weil again. (Doc. 50-1, p. 287). The next day, Mr. Hill forwarded to Ms. Weil Mr. Sharp's email detailing the safety concerns Mr. Martin raised in early January. (Doc. 50-1, p. 265). Soon after, Ms. Weil told Mr. Martin that he did not have an EEOC case. (Doc. 50-1, p. 287).

In early April, Norfolk Southern's medical department cleared Mr. Martin to return to work. (Doc. 50-1, p. 287). Mr. Hill coordinated a second FDE and asked Steve Guinn to conduct the test. (Doc. 50-7, p. 7, ¶ 26; Doc. 50-5, pp. 5, 7, tpp. 11:23–12:9, 21:9–16). Mr. Guinn testified that he did not speak to a Norfolk Southern employee about Mr. Martin before he conducted the FDE and that he was not told to fail Mr. Martin or find him unfit for service. (Doc. 50-5, p. 6, 14, tpp. 15:19–23, 47:13–48:9). According to Mr. Brockman, Mr. Hill told Mr. Guinn that

Mr. Martin was too old and too slow to be a yard conductor before Mr. Guinn conducted the FDE. (Doc. 57-1, p. 22, tpp. 80:10–81:19). Mr. Hill explained that he was afraid Mr. Martin would get hurt and slow operations. (Doc. 57-1, p. 22, tpp. 80:10–81:19). After hearing Mr. Hill's comments, Mr. Guinn predetermined that he would fail Mr. Martin on the FDE. (Doc. 57-1, p. 22, tpp. 80:1–81:13).

On April 29, 2021, Mr. Guinn administered Mr. Martin's second FDE. (Doc. 50-5, p. 74). Mr. Noe and Mr. Sillimon observed the evaluation. (Doc. 50-5, p. 74). Mr. Guinn reported that Mr. Martin failed two portions of the FDE because of rules violations, continually favored and dragged his right leg while walking, bent using only one leg, grabbed the rail car when coming out of a crouch to regain balance, had trouble picking up a train knuckle from the ground, bent only at his waist and did not use his knees, and nearly lost his balance several times. (Doc. 50-5, pp. 74–75).

According to Mr. Sillimon, Norfolk Southern increased the second FDE's physical demands. Mr. Martin was required to walk 4,000 feet rather than 1,000 feet; to make 20 air hose couplings rather than one; and to mount and dismount more railcars, operate more hand brakes, and throw more manual switches. (Doc. 57-2, p. 5, ¶ 12). Mr. Martin had to remove a knuckle, which weighs approximately 90 pounds, carry it about 50 feet, drop it on the ground, pick it up, carry it back 50 feet to the coupler, and replace it into the railcar. (Doc. 57-2, p. 5, ¶ 12). These activities

11

were more than a conductor would perform in the same amount of time during a normal shift. (Doc. 57-2, p. 6, ¶ 17). Mr. Sillimon believes that Mr. Martin should have passed the evaluation. (*See* Doc. 57-2, p. 6, ¶ 18).

After the evaluation, Mr. Guinn told Mr. Brockman that "he used the union rep . . . as a patsy" so that Mr. Martin could not "get out of" the FDE results. (Doc. 57-1, pp. 20, 26–27, tpp. 71:4–21, 97:2–98:1). Mr. Guinn laughed when he discussed the evaluation. (Doc. 57-1, pp. 26–27, tpp. 97:2–98:6). Mr. Guinn spoke to Mr. Hill about the evaluation before he informed Mr. Martin of the evaluation results. (Doc. 50-5, p. 16, tpp. 55:21–56:3).

In a letter dated May 13, 2021, Mr. Guinn notified Mr. Martin that he failed his second FDE. (Doc. 50-5, p. 73). The letter identified steps Mr. Martin could take to return to work with Norfolk Southern, including seeking another FDE or applying for an alternative position. (Doc. 50-5, p. 73).

When Mr. Martin received the letter, he had worked for Norfolk Southern for more than 40 years, was 65 years old, held an associate's degree in general studies, and earned more than $129,000 annually. (Doc. 50-1, pp. 7–8, 84, tpp. 24:13–25:16, tp. 329:16–20; Doc. 50-1, pp. 153, 275). Mr. Martin made an internal claim of age discrimination. (Doc. 50-1, p. 47, tpp. 182:14–183:5). Mr. Martin called Mr. Brockman to ask why Norfolk Southern had not "put him back in service" when "he had been cleared by his doctors, his cardiologist, [and] . . . NS medical." (Doc. 57-

1, p. 17, tpp. 59:16–60:20).  Mr. Martin did not contact Norfolk Southern to request another FDE or apply for another position.  (Doc. 50-1, p. 71, 72, tpp. 277:1–5, 279:21–23, 281:7–9).

In late 2021, Mr. Martin applied for a position with Lowes.  (*See* Doc. 50-1, p. 21, tpp. 78:16-79:4).  In 2023, Mr. Martin applied for a position with a pool service company.  (*See* Doc. 50-1, p. 21, tp. 79:5–7).  Mr. Martin was not offered either job. (Doc. 50-1, p. 21, tpp. 78:16–79:15).  Mr. Martin has not applied for other positions because he was still employed by Norfolk Southern, was medically cleared to work, was prepared to return to work, and expected Norfolk Southern to call him back to work.  (Doc. 50-1, p. 21, tp. 78:19–79:15; Doc. 50-1, p. 273).

Mr. Martin contends that soon after he was removed from service, Norfolk Southern replaced him with a man in his 30s.  (Doc. 50-1, p. 285).  Mr. Hill asserts that Norfolk Southern has not hired a new employee to perform Mr. Martin's conductor tasks; several employees share Mr. Martin's former tasks.  (Doc. 50-7, p. 8, ¶ 32).

## III.

The ADEA prohibits employers from discharging or taking other actions adverse to an employee who is at least 40 years of age because of the employee's age. *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (citations omitted); 29 U.S.C. §§ 623(a), 631(a).  "[T]he ordinary meaning of the ADEA's

13

requirement that an employer took adverse action because of age is that age was the reason that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 176 (2009) (citation and quotations omitted). To succeed on an ADEA discrimination claim, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross*, 557 U.S. at 176 (citation omitted); *see Sims v. MVM, Inc.,* 704 F.3d 1327, 1332 (11th Cir. 2013) (citing *Gross,* 557 *U.S.* at 129) ("The burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action."). A plaintiff may establish unlawful discrimination using direct or circumstantial evidence. *Liebman*, 808 F.3d at 1298.

Direct evidence of discrimination is evidence that reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Van Voorhis v. Hillsborough County Bd. of County Comm'rs,* 512 F.3d 1296, 1300 (11th Cir. 2008). It consists of evidence that, if believed, would prove the existence of a fact without inference. *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1558 (11th Cir. 1988). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age [] constitute direct evidence." *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989); *see Rojas v. Florida,* 285 F.3d 1339, 1342 n.2 (11th Cir. 2002). "[D]irect evidence does not

14

include 'stray remarks in the workplace' or 'statements by nondecisionmakers' or 'statements by decisionmakers unrelated to the decisional process itself.'" *Standifer,* 401 F. Supp. 2d at 1215 (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).

Circumstantial evidence of discrimination is evidence that would allow a jury to "infer intentional discrimination by the decisionmaker." *See Lewis v. City of Union City,* 934 F.3d 1169, 1185 (11th Cir. 2019). A plaintiff may provide sufficient circumstantial evidence of discrimination to avoid summary judgment by presenting "a convincing mosaic of circumstantial evidence." *Lewis,* 934 F.3d at 1185. A plaintiff may assemble a convincing mosaic with "evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733-34 (7th Cir. 2011)). To demonstrate that his employer's justification is pretextual, "a plaintiff generally must 'demonstrate[] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Loberger v. Del-Jen Inc.*, 616 Fed. Appx. 922, 927 (11th Cir. 2015) (quoting *Combs v. Plantation*

15

*Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). "So long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011).

Viewing the evidence in the light most favorable to Mr. Martin, Mr. Hill told Mr. Brockman that Mr. Martin was too old to be a yard conductor. (Doc. 57-1, p. 11, 12, tpp. 39:20–40:6, 34:22–35:3, 42:19–43:2). About two weeks after Mr. Martin became a yard conductor, Mr. Hill asked an employee to monitor Mr. Martin's job performance. (Doc. 50-7, p, 4, ¶10). Days later, Mr. Hill inquired about Mr. Martin's age, years of service, and retirement plans, and then removed him from service. (Doc. 50-1, p. 284). Twice, Mr. Hill arranged for Mr. Martin to undergo an FDE after Norfolk Southern's medical department cleared Mr. Martin to resume work. (Doc. 50-7, p. 6, 7, ¶¶ 22, 26). Norfolk Southern fabricated reasons to fail Mr. Martin on his first FDE. (Doc. 50-7, pp. 4–5, ¶¶ 10, 12). Before Mr. Martin's second FDE, Mr. Hill told Mr. Guinn that Mr. Martin was too old to be a yard conductor. (Doc. 57-1, p. 22, tpp. 80:1–81:13). Mr. Guinn predetermined that Mr. Martin would fail his second FDE. (*See* Doc. 57-1, pp. 22, tpp. 80:1–81:13). Norfolk Southern required Mr. Martin to perform unduly physically demanding tasks on the second FDE. (Doc. 57-2, pp. 4–5, ¶ 10, 12).

16

Mr. Martin argues that he has provided direct evidence of discrimination based on Mr. Hill's comment that Mr. Martin was "too old and slow" to be a yard conductor. The Court need not determine whether Mr. Martin has introduced direct evidence of discrimination because Mr. Martin has presented ample evidence that raises a "reasonable inference" that Norfolk Southern discriminated against him because of his age.

Based on the evidence presented, a reasonable jury could infer that Norfolk Southern discharged Mr. Martin because of his age. Mr. Hill's comments about Mr. Martin indicate discriminatory animus against Mr. Martin based on age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age."). Likewise, evidence that Norfolk Southern fabricated reasons to fail Mr. Martin on his FDEs, conversations between Mr. Hill and an FDE administrator regarding Mr. Martin's age, and the unexplained increase in difficulty of tasks during the second FDE suggest that Norfolk Southern's proffered reason for its actions–safety–is pretextual. This evidence of discriminatory animus and pretext, combined with the close temporal proximity between Mr. Martin becoming a yard conductor and Mr. Hill deciding to remove him from service establishes a "convincing mosaic" of circumstantial evidence from which a jury may infer that Norfolk Southern discriminated against

17

Mr. Martin because of his age. *See Kilgore v. Trussville Dev.*, LLC, 646 Fed. Appx. 765, 774 (11th Cir. 2016); *Mora v. Jackson Mem. Found., Inc.*, 597 F.3d 1201, 1205 (2010).

Accordingly, the Court denies Norfolk Southern's motion for summary judgment with respect to Mr. Martin's ADEA discrimination claim.

*** 

To establish a *prima facie* case of ADEA retaliation, a plaintiff must prove that he participated in a protected activity, that he suffered an adverse employment action, and that there is a causal connection between his participation in the protected activity and the adverse employment decision. *McCreight v. AuburnBank*, 117 F.4th 1322, 1339 (11th Cir. 2024). Mr. Martin participated in protected activity when he complained to Norfolk Southern's EEOC department about potential age discrimination. *See McCreight*, 117 F.4th at 1339 (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002), and *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)). Norfolk Southern's decision to hold him out of service was an adverse employment action. *See McCreight*, 117 F.4th at 1339.

Yet Mr. Martin has not established a causal connection between these actions. Causation requires "more than some sort of temporal proximity between the employee's complaints and the adverse employment action." *McCreight*, 117 F.4th at 1339. Some "proof of the decisionmaker's knowledge or awareness of those

18

complaints is also required." *McCreight*, 117 F.4th at 1339 (citing *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1054 (11th Cir. 2020)).  Norfolk Southern contends that Mr. Martin has not demonstrated that a decisionmaker was aware of his complaints about age discrimination.  (Doc. 51, p. 21).  Mr. Martin has not responded to this argument.  Accordingly, Mr. Martin has abandoned his ADEA retaliation claim.  *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (citations omitted) (concluding that party's "failure to brief and argue [an] issue during the proceedings before the district court [wa]s grounds for finding that the issue has been abandoned").  The Court therefore grants Norfolk Southern's motion for summary judgment on Mr. Martin's ADEA retaliation claim.

***

"The ADA bars employers from 'discriminat[ing] against a qualified individual on the basis of disability.'"  42 U.S.C. § 12112(a); *see Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1191 (11th Cir. 2024).  "[A]n employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor."  *EEOC v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019); 42 U.S.C. §§ 12102(1), (3).  "To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his

19

disability." *Barneman v. Int'l Longshoreman Ass'n Local 1423*, 840 Fed. Appx. 468, 477 (11th Cir. 2021) (citing *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007)).

Mr. Martin has not established that he is disabled under the ADA.  Mr. Martin contends that Norfolk Southern's perception that he could not safely perform his work demonstrates that the company regarded him as disabled.  (Doc. 60, pp. 33–34).  But "[a]n employer's perception that an employee cannot perform a particular task safely" does not "establish that the employer regarded the employee as disabled."  *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999) (citing *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir. 1993)); *see Davis v. Sailormen, Inc.*, 281 Fed. Appx. 958, 960 (11th Cir. 2008).  Because Mr. Martin has not established that he was disabled or that Norfolk Southern regarded him as disabled, Mr. Martin's ADA claim fails as a matter of law.  *In re Deepwater Horizon BELO Cases*, 119 F.4th 937, 944 (11th Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

***

When a plaintiff establishes liability for discrimination based on age, he is "presumptively entitled to back pay."  *See United States EEOC v. Massey Yardley Chrysler Plymouth*, 117 F.3d 1244, 1251–1252 (11th Cir. 1997) (ADEA harassment and constructive discharge claims).  Nevertheless, a plaintiff must "'mitigate damages by being reasonably diligent in seeking employment substantially

equivalent to the position []he was denied.'" *Weatherly v. Alabama State Univ.*, 728 F.3d 1263, 1272–73 (11th Cir. 2013) (quoting *Smith v. Am. Serv. Co. of Atlanta*, 796 F.2d 1430, 1431 (11th Cir. 1986)); *see Massey Yardley Chrysler Plymouth*, 117 F.3d at 1251–1252.

Norfolk Southern has "[t]he burden of proving lack of diligence." *Massey Yardley Chrysler Plymouth*, 117 F.3d at 1251–52. Typically, "the employer must show that "comparable work was available and the claimant did not seek it out." *Weaver v. Casa Gallardo*, Inc., 922 F.2d 1515, 1527 (11th Cir. 1991) (quoting *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1138 (5th Cir. 1988)), superseded by statute on other grounds as stated in *Galbreath v. Hale Cnty. Comm'n*, 754 Fed. Appx. 820, 830 (11th Cir. 2018). But if Norfolk Southern "proves that [Mr. Martin] has not made reasonable efforts to obtain work," the company "[does] not also have to establish the availability of substantially comparable employment." *Weaver v. Casa Gallardo*, Inc., 922 F.2d 1515, 1527 (11th Cir. 1991) (quoting *Sellers*, 839 F.2d at 1138).

What constitutes reasonable diligence is an issue of fact. *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1470 (11th Cir. 1985). The reasonableness of an individual's attempts to obtain other employment "should be evaluated in light of the individual characteristics of the claimant and the job market." *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990) (quoting *Rasimas v. Michigan Dept. of Mental*

*Health*, 714 F.2d 614, 624 (6th Cir. 1983)); *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 865 (3d Cir. 1995).

"Substantially equivalent employment" is employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status to those available to employees holding the position from which the [ADEA] claimant has been discriminatorily terminated." *Weaver*, 922 F.2d at 1527. "If the former employee cannot find substantially equivalent employment, he may 'lower his sights' and accept noncomparable employment." *Weaver*, 922 F.2d at 1527. But the employee "need not go into another line of work, accept a demotion, or take a demeaning position" to "fulfill his duty to mitigate." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1274 (4th Cir. 1985) (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)); *see Weaver*, 922 F.2d at 1527 (stating that the duty to mitigate "does not require that a person remain employed despite dissatisfaction").

Viewing the evidence in the light most favorable to Mr. Martin, from January 14, 2021, until May 13, 2021, Mr. Martin attempted to return to work at Norfolk Southern by undergoing a medical evaluation and participating in two FDEs. A reasonable jury could determine that Mr. Martin acted with reasonable diligence to mitigate his loss during this period.

22

After Norfolk Southern notified Mr. Martin on May 13, 2021, that he could not return to work after his second FDE, he contacted Mr. Brockman to ask why Norfolk Southern was not returning him to service when he was medically cleared to work. (Doc. 57-1, p. 17, tpp. 59:16–60:20). Mr. Martin applied for a position at Lowes in late 2021 and a position with a pool service company in 2023. (*See* Doc. 50-1, p. 21, tpp. 78:16–79:7). Thus, Mr. Martin's efforts to obtain employment from May 2021 to the present day are limited.

Nevertheless, whether Mr. Martin acted with reasonable diligence is a question of fact for the jury under the circumstances of this case. Mr. Martin asserts that he has made few attempts to obtain other employment because he remains employed by Norfolk Southern and is ready to return to duty. (*See* Doc. 50-1, p. 21, 273, tp. 79:8–14). When Norfolk Southern informed Mr. Martin that he could not return to duty in May 2021, Mr. Martin was 65 years old, held an associate's degree in general studies, had no work experience apart from his 40-year career with the railroad, and was earning over $129,000 per year working for the railroad. (Doc. 50-1, pp. 7–8, 84, tpp. 24:13–25:12, 329:16–20; Doc. 50-1, pp. 153, 275). Norfolk Southern has not explained what reasonable efforts an individual in Mr. Martin's position could take to find employment affording similar "compensation, job responsibilities, working conditions, and status" to his yard conductor position. *See Weaver*, 922 F.2d at 1527. Under these circumstances, whether Mr. Martin

23

exercised reasonable diligence to obtain substitute employment is a question of fact for the jury. Therefore, the Court denies Norfolk Southern's motion for summary judgment on Mr. Martin's request for back pay, front pay, and lost benefits.

## IV.

For the reasons discussed above the Court grants in part and denies in part Norfolk Southern's motion for summary judgment on Mr. Martin's claims. The Court grants Norfolk Southern's motion with respect to Mr. Martin's ADEA retaliation and ADA discrimination claims and denies Norfolk Southern's motion with respect to Mr. Martin's ADEA discrimination claim and claim for backpay. The Clerk of Court shall please TERM Doc. 49.

By separate order, the Court will set a telephone conference to discuss a trial date.

**DONE** and **ORDERED** this April 7, 2026.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE